UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE  DIVISION

BARBARA BUTTRY, DENNIS R.              )
DUNCAN, BERNARD FEHRIBACH, JR.,  )
JUSTINA GATES, JOHN E. GOFF, JADA  )
GRAY, ESTHER HOLDER, TONY              )
KNIGHT, JIM LITTON, JAMES              )
MAROTTA, KIRBY RUSSELL, BRENNA )
THOMPSON, G. LEE TURPEN, KATHY  )
VAN HAAFTEN, GEORGE                      )
WIMPLEBERG, and TRAVIS                  )        3:02-cv-00223 RLY-WGH
THORBECK,                                          )
          Plaintiffs,                          )
                                      )
     vs.                                          )
                                        )
BOARD OF COMMISSIONERS OF          )
POSEY COUNTY, POSEY COUNTY        )
EMERGENCY MEDICAL SERVICES, and )
POSEY COUNTY, INDIANA,                  )
          Defendants.                         )

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and
PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs, Barbara Buttry, Dennis R. Duncan, Bernard Fehribach, Jr., Justina

Gates, John E. Goff, Jada Gray, Esther Holder, Tony Knight, Jim Litton, James Marotta,

Kirby Russell, Brenda Thompson, G. Lee Turpen, Kathy Van Haaften, George

Wimpleberg, and Travis Thorbeck (collectively "Plaintiffs"), are EMT's, advanced

EMT's, and paramedics currently or previously employed by the Board of

Commissioners of Posey County ("Commissioners"), Posey County Emergency Medical

1

Services ("Posey County EMS"), and Posey County, Indiana (collectively "Defendants"). Plaintiffs filed a Complaint against the Defendants, which has since been amended, alleging that the Defendants willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), by failing to pay Plaintiffs for all of the hours in their 24 hour shifts.  Plaintiffs further allege that Defendants violated the Indiana Wage Payment Statute, Indiana Code § 22-2-5-1 *et seq*., by failing to pay Plaintiffs for wages earned within 10 days of their pay periods.  Defendants now move for summary judgment on Plaintiffs' claims, and Plaintiffs cross-move[1] for partial summary judgment.  For the reasons explained below, the court **GRANTS** in part, and **DENIES** in part, Defendants' motion, and **DENIES** Plaintiffs' motion.

## I.    Summary Judgment Standard

Disposition of a case on summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P.56(c).  The record and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party.  *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262,

---

[1] Although Plaintiffs move for partial summary judgment, it appears, based upon their brief in response to Defendants' motion for summary judgment and in support of their motion for partial summary judgment, that Plaintiffs move for summary judgment on every issue and sub-issue upon which Defendants move for summary judgment with the exception of laches, waiver, and estoppel.

264 (7th Cir. 1996).

The moving party bears the burden of demonstrating the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden may be met by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. If the moving party meets its burden, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading," but must present specific facts to show that there is a genuine issue of material fact. Fed.R.Civ.P. 56(e); *see also National Soffit*, 98 F.3d at 265 (citing *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir. 1991)).

## II.    Facts

In Defendants' Brief in Support of Summary Judgment, Defendants submitted a Statement of 95 Material Facts Not in Dispute. Plaintiffs then filed a Memorandum of Law in Response to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment, in which they raised objections to a number of Defendants' asserted material facts. In their brief, Plaintiffs also filed a Designation of 156 Material Facts Not in Dispute. In Defendants' Reply to Plaintiffs' Memorandum of Law in Response to Defendants' Motion for Summary Judgment and Defendants' Response to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment, Defendants responded to Plaintiffs' objections to their own cited facts, and raised objections to Plaintiffs' designated facts. Plaintiffs then filed a Reply in Support of Cross-Motion for Partial Summary Judgment in which they

3

listed each of their numbered facts to which Defendants raised an objection and
responded to the same.  Not to be outdone, Defendants then filed a Surreply to Plaintiffs'
Reply in Support of Cross-Motion for Partial Summary Judgment, in which they
responded to certain objections raised in Plaintiffs' Reply.  Counsel has the right to
represent his or her client in the best way he or she sees fit.  However, in this case, the
voluminous lists of asserted material facts and extensive evidentiary materials in support
of the same – in particular, the objections raised in response to the opposing parties'
statements of material facts – served only to confuse, rather than clarify, the material facts
at issue in this case.  The court reviewed the facts and evidence to the best of its ability,
determined which objections were meritorious, and now finds as follows:

> **A.    Background**

1.     Posey County, Indiana is a political subdivision of the State of Indiana and a local
       unit of government.  (Allison Dep. at 259; Redman Aff. ¶ 6).

2.     The Board of Commissioners of Posey County, Indiana is the executive body of
       Posey County, Indiana.  (Allison Aff. ¶ 4).

3.     Posey County EMS is a department of Posey County, Indiana.  (Allison Dep. at
       259; Redman Aff. ¶ 14).

4.     Posey County EMS and Posey County, Indiana are subject to regular review and
       audits by the Indiana State Board of Accounts.  (Allison Aff. ¶ 5; Redman Aff. ¶
       13).

5.     Prior to the Spring of 1995, Posey County EMS operated as an advanced EMT

level service, with generally one employee per shift and volunteer drivers. (Russell Dep. at 94, 99).

6.  In 1995, Plaintiff Kirby Russell was appointed to and accepted the position of Acting Director of Posey County EMS.  (Russell Dep. at 36-37).

7.  At that time, employees worked 24-hour shifts and were paid for all 24 hours they were on duty.  (Russell Dep. at 113; Cox Dep. at 14; Deckard Dep. at 9).

**B.      New Sleep Time Policy**

8.  During Russell's tenure as Acting Director, Posey County EMS became a paramedic level service for most of its stations, with two employees, one of whom was a paramedic, per shift.  (Russell Dep. at 97, 99, 106).

9.  Around the same time Posey County EMS changed to a paramedic, two-per-shift service, a new work schedule was instituted to carry out the requirements for a paramedic level of service.  (Russell Dep. at 223-24; Deckard Aff. ¶ 7).

10. The new schedule and policy included the deduction of sleep time, which meant Posey County EMS did not pay its field operations personnel for the hours from 11:00 p.m. to 7:00 a.m. unless they were called out on a run.  (Allison Dep. at 61; Russell Dep. at 99, 109-10).

**C.      Mandatory Meeting and Plaintiffs' Objections to the New Policy**

11. Russell, in his capacity as Acting Director of Posey County EMS, called a meeting of all Posey County EMS employees to discuss proposed upcoming changes of the

service, including changes in the work schedules and a new policy on sleep time.[2]

(Russell Dep. at 124).

12.     At the mandatory meeting, some of the Posey County EMS employees[3] voiced

objections about the deduction of sleep time.  (Russell Dep. at 137-38; Van

Haaften Dep. at 38-39, 45; Thompson Dep. at 24-25; Holder Dep. at 53-54; Gates

Dep. at 48-49; Goff Dep. at 32, 38; Litton Dep. at 72-73, 75, 77; Buttry Dep. at

57).

13.     Russell informed Posey County Commissioner President William Elpers and

Posey County Commissioner Greg Martin of the employees' objections to the new

policy (i.e., specifically to the deduction of sleep time hours).  (Russell Dep. at

235-36, 244; Martin Aff. ¶ 10).

14.     In addition, John Goff testified that he made objections to the sleep time policy to

---

[2] Sleep-time hours were deducted on 24-hour shifts that generally began at 8:00 a.m. and
ended at 8:00 a.m. the following day.  (Defendants' First Interrogatory Response at 6; Russell
Dep. Ex. 12; Deckard Aff. ¶ 24).

[3] Eight (8) of the Plaintiffs in this lawsuit, namely, John E. Goff, Justina Gates, Barbara
Buttry, Esther Holder, Jim Litton, Kirby Russell, Kathy Van Haaften, and Brenda Thompson
were employed by Posey County EMS at the time deduction of sleep time went into effect.
(Allison Aff. ¶ 14).  Eight (8) of the Plaintiffs in this lawsuit, namely, Jada Gray, Dennis R.
Duncan, Travis Thorbeck, Bernard Fehribach, Jr., G. Lee Turpen, Tony Knight, George
Wimpleberg, and James Marotta, were hired by Posey County EMS when deduction of sleep
time was already in effect.  (Allison Aff. ¶ 15; Allison Dep. at 258).  These employees voiced
objections to Russell when they learned of the policy.  (Deposition of George Wimpleberg
("Wimpleberg Dep.") at 74; Deposition of Bernard Fehribach, Jr. ("Fehribach Dep.") at 54;
Marotta Dep. at 86; Deposition of Lee Turpen ("Turpen Dep.") at 57; Deposition of Travis
Thorbeck ("Thorbeck Dep.") at 63, 82-83; Duncan Dep. at 19, 44-45; Martin Aff. ¶¶ 9, 10).

Posey County Commissioner Martin Redman.  (Goff Dep. at 97).

15.    Plaintiffs did not make contemporaneous written objections to the deduction of

sleep time to either Posey County EMS management or to the Commissioners.

(Buttry's Answer to Interrogatory No. 7; Buttry Dep. at 57; Duncan's Answer to

Interrogatory No. 7; Fehribach's Answer to Interrogatory No. 7; Fehribach Dep. at

57; Gates; Answer to Interrogatory No. 7; Goff's Answer to Interrogatory No. 7;

Gray's Answer to Interrogatory No. 7; Holder's Answer to Interrogatory No. 7;

Knight's Answer to Interrogatory No. 7; Litton's Answer to Interrogatory No. 7;

Marotta's Answer to Interrogatory No. 7; Russell's Answer to Interrogatory No. 7;

Thompson's Answer to Interrogatory No. 7; Thorbeck's Answer to Interrogatory

No. 7; Turpen's Answer to Interrogatory No. 7; Van Haaften's Answer to

Interrogatory No. 7; Wimpleberg's Answer to Interrogatory No. 7; Whitmer Dep.

at 49; Wimpleberg Dep. at 62-63, 75-76).

16.    Plaintiffs did not attend any Commissioners' meetings to voice an objection to or

disagreement with the deduction of sleep time.  (Allison Aff. ¶ 23; Duncan Dep. at

38-39; Gates Dep. at 62, 64; Goff Dep. at 42-43; Litton Dep. at 43; Thorbeck Dep.

at 82; Turpen Dep. at 70; Van Haaften Dep. at 71-72; Whitmer Dep. at 49;

Wimpleberg Dep. at 62-63, 76).

17.    On April 26, 1995, Russell wrote a short letter to Defendants' attorney, Marc

Hawley, in which he stated that "[t]he crews seem to be content with the new work

schedule you created for them, with one exception . . . [that being,] a 32-hour shift

on Tuesdays and Wednesdays." (Hawley Aff., Dep. Ex. 98). The letter does not

address the new policy regarding the deduction of sleep time.

18. On May 7, 1995, the new schedule and deduction of sleep time policy were

implemented. (Allison Dep. at 59).

### D.    Continuing Objections

19. After the institution of the sleep time policy, Plaintiffs occasionally objected to

Russell, although they could not recall specific dates and times. (Russell Dep. at

223, 235-36; Van Haaften Dep. at 45, 51; Thompson Dep. at 52; Marotta Dep. at

86-87, 89, 91; Turpen Dep. at 57; Gates Dep. at 100; Thorbeck Dep. at 82-83;

Duncan Dep. at 19, 44; Goff Dep. at 39, 60-61; Litton Dep. at 50, 83, 84, 88;

Buttry Dep. at 58-61).

20. Plaintiff Esther Holder testified that she complained to Rodney Allison when he

became Director, *see* Finding of Fact ¶ 23. (Holder Dep. at 54-59, 67; Allyn Aff.

¶¶ 9-10).

### E.    New Director

21. In 2001, Russell resigned his position as Director of Posey County EMS. (Allison

Aff. ¶ 3).

22. On September 17, 2001, Allison assumed the role of Director. (Allison Dep. at 19;

Defendants' First Interrogatory Response at 5).

### F.    Kelley System

23. In January 2002, Posey County EMS employees changed their work schedule to

8

the Kelley System.  (Allison Dep. at 112).

24.   The Kelley System provided that employees would work two 24-hour shifts one

week  ("short week"), and three 24-hour shifts the following week ("long week").

Employees were paid for 40 hours during the short week and were paid for 48

hours during the long week.  (Allison Dep. at 120).

25.   During short weeks, employees were not paid when they were called out on an

emergency run during sleep time, regardless of how long the run lasted, until they

worked the requisite 40 hours.  (Allison Dep. at 125; Knight Dep. at 42-43).

**G.    Pay Days and Pay Periods**

26.   Plaintiffs submitted an Interrogatory to Defendants which stated: "[E]xplain in

detail Defendants' policy of when the Plaintiffs receive their pay."  Defendants

answered:

> On December 31, 1999, the Posey County Auditors office
> sent out a form listing each pay period and pay date for the
> year 2000 and each subsequent year thereafter.  Employees
> were on a monthly basis or semi-monthly basis at their own
> discretion.  Each employee signed a form indicating their
> choice of payment timing.  Monthly employees received a
> payroll check for 160 hours salary, any overtime worked, and
> any holiday time for the designated pay period on the first
> Monday of each month.  Semi-monthly employees received
> 80 hours salary, any overtime worked, and holiday time for
> the designated pay period on the first Monday of each month
> and the [sic] received a second check for 80 hours salary two
> weeks later.
>
> On April 2, 2003, the county changed its payroll from
> monthly and semi-monthly to paying all employees every
> other Wednesday for hours worked during the previous pay

period including overtime and holiday pay.

(Defendants' Answers to First Set of Interrogatories Propounded by Plaintiffs, Interrogatory No. 3).

27.    Subsequently, Plaintiffs requested the Defendants to produce: "[A]ll documents reflecting communications regarding the time for which Plaintiffs would be paid." Plaintiffs' Request for Production No. 8.  In response, Defendants stated: "[S]ee attached listings of pay periods and pay days for years 1999-2004. . . ."  The attached was entitled "Pay Periods and Pay Days for 1999-2004" and included handwritten charts of pay periods and corresponding pay days for the years 1999 to 2004.  (Plaintiffs' Ex. 23).

28.    Allison, Defendants' 30(b)(6) witness, testified with regard to the handwritten charts referred to above.  He testified he could not clearly determine whether the charts reflected the date upon which the employees' salary was paid, whether they reflected the date upon which the employees' overtime was paid, or both.  In order to determine what the charts reflected, he testified that he would need to review the payroll records.  (Allison Dep. at 173-74).

29.    In Defendants' Surreply to Plaintiff's Reply in Support of Cross-Motion for Summary Judgment, Defendants submitted the Affidavit of Gladys Reising.  She is currently employed as Office Manager for the EMS Department of Posey County and prepares payroll for submission to the Posey County Auditor.  (Reising Aff. ¶¶ 4-5).  She testified that the handwritten charts "identify overtime due for the

10

previous month's work."  (Reising Aff. ¶ 14).

30.     Given the conflicting testimony over the meaning of the handwritten charts, the

        court is unable to determine what information – salary, overtime, or both – the

        charts reflect.

31.     All other facts relevant to the court's opinion will be discussed in the opinion

        below.

## III.     Discussion

### A.     Indiana Wage Payment Statute

Plaintiffs allege that Defendants failed to pay them their wages within 10 days

after the end of the pay period in which the wages were earned, in violation of the Indiana

Wage Payment Statute, I.C. § 22-2-5-1(b).  Defendants argue that Plaintiffs' claim must

fail for the following reasons: (1) Defendants are not "employers" as defined by the

Indiana Wage Payment Statute; (2) Plaintiffs Fehribach and Wimpleberg cannot proceed

under the Indiana Wage Claims Statute because they were involuntarily terminated from

their employment; (3) the Wage Claims Statute, I.C § 36-2-8-2, rather than the Indiana

Wage Payment Statute, I.C. § 22-2-5-1(b), controls their payment method; and (4)

Plaintiffs are exempt from the Indiana Wage Payment Statute, I.C. § 22-2-5-1, because

they are salaried employees.  The court will address each of these arguments in turn

below.

### 1.     Defendants Are "Employers" as Defined by the Indiana Wage Payment Statute

The Indiana Wage Payment Statute defines the scope of its authority as: "Every person, firm, corporation, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana . . ."  I.C. § 22-2-5-1(a).  In support of their argument that they are not subject to the Indiana Wage Payment Statute, Defendants compare the language in that statute with the language used in Indiana's minimum wage statute, codified under I.C. § 22-2-2-3, which specifically uses the term "political subdivision."  Defendants contend that if counties were meant to fall under the Indiana Wage Payment Statute, the Indiana legislature would have used that term or one synonymous with the same, like public employer.

In *Braddock v. Madison County*, the court specifically found that the Indiana Wage Payment Statute applied to Madison County, Indiana employees.  34 F.Supp.2d 1098, 1114 (S.D. Ind. 1998) ("The statute applies to public employers like Madison County."). The Indiana Court of Appeals applied the statute against municipalities on at least two prior occasions.  *See Logansport v. Remley*, 453 N.E.2d 326 (Ind.Ct.App. 1983); *Hendershot v. Carey*, 616 N.E.2d 412 (Ind.Ct.App. 1993).  In the absence of any authority to the contrary, the court finds the Indiana Wage Payment Statute applies to Defendants herein.

### 2.   The Indiana Wage Payment Statute Applies to Plaintiffs Fehribach and Wimpleberg

Defendants contend that Plaintiffs Fehribach's and Wimpleberg's claims fall under the Indiana Wage Claims Statute, I.C. § 22-2-9-(a), and not, as Plaintiffs' allege, under

the Indiana Wage Payment Statute.  In support of their argument, Defendants cite the

court to *St. Vincent Hosp. and Health Care v. Steele*, which explained that the statutes

applied to "different categories of claimants":

> Although both the Wage Claims Statute and the Wage Payment Statute set
> forth two different procedural frameworks for wage disputes, each statute
> applies to different categories of claimants.  The Wage Claims Statute
> references employees who have been separated from work by their
> employer and employees whose work has been suspended as a result of an
> industrial dispute.  I.C. § 22-2-9-2(a)(b).  By contrast, the Wage Payment
> Statute references current employees and those who have voluntarily left
> employment, either permanently or temporarily.  I.C. § 22-2-5-1(b).

766 N.E.2d 699, 705 (Ind. 2002).

Based purely on the fact that Fehribach and Wimpleberg were involuntarily

terminated from their employment with Defendants, one could argue that the Indiana

Wage Claims Statute must control.  However, based upon a reading of Plaintiffs'

Amended Complaint, Fehribach and Wimpleberg allege that they were not paid within ten

days of the end of the pay period during their employment with Defendants.  Thus, the

fact that they were involuntarily terminated is irrelevant to their particular wage claim.

Therefore, they may proceed under the Indiana Wage Payment Statute.

### 3.        I.C. § 36-2-8-2 Is Inapplicable to Plaintiffs' Claim

I.C. § 36-2-8-2 authorizes the county auditor and treasurer to pay salaries and

wages to county officers and employees every month, twice per month, every two weeks,

or every week, with the manner of payment to be authorized by the legislative body of the

county.  *Id*.  Defendants contend that because this statute specifically applies to wage

payment by counties, the plain meaning of the statute should apply and supersede the Indiana Wage Payment Statute.

The court finds I.C. § 36-2-8-2 concerns the frequency in which a particular county employee is paid.  Plaintiffs' Amended Complaint does not challenge the frequency within which they were paid; rather, it challenges the lag time between their paychecks and the end of the corresponding pay period.  Because Plaintiffs' allegations concern lag time and not pay frequency, I.C. § 36-2-8-2 is inapplicable to Plaintiffs' claim.

### 4.    Whether Plaintiffs Were Salaried Employees Is An Issue of Fact

I.C. § 22-2-5-1.1 provides that "[s]alaried employees who are eligible for overtime compensation under the Fair Labor Standards Act (29 U.S.C. 201 et seq.) are specifically exempted from [I.C. 22-2-5-1]."  In *Hendershot v. Carey*, the Indiana Court of Appeals set forth the criteria to determine whether an employee is hourly or salaried, noting that such a determination "is necessarily fact-sensitive" and requires an "evaluation of the totality of the circumstances including, but not limited to, employment contract provisions, method and time of payment, relation of time worked to pay received, applicable regulations and ordinances, and express classification."  *Id*., 616 N.E.2d 412, 418 (Ind.Ct.App. 1993).

In support of their contention that Plaintiffs were salaried employees, and thus exempt under the Indiana Wage Payment Statute, Defendants direct the court to Deposition Exhibit 78, the Posey County Annual Salary Ordinances from 1994 to 2004.

14

This document reflects the pay that each EMS employee received for the particular years in question.  The classification of an employee, however, is not conclusive evidence that a particular employee is hourly or salaried.  *Id*. at 419.

Plaintiffs direct the court to the following facts: (1) Plaintiffs were classified as non-exempt (Allison Dep. at 196); (2) Defendants break their employees' pay down by the number of hours that the employees work during one pay period (Allison Dep. at 86); (3) Plaintiffs filled out a time card each week of work, which were then turned into the Director's office for approval (Allison Dep. at 153); and (4) Plaintiffs were not paid for time off after their paid time-off benefits were exhausted (Allison Dep. at 86).

Given the totality of the circumstances, the court finds these facts create a material issue of fact as to whether Plaintiffs were hourly or salaried employees for purpose of the Indiana Wage Payment Statute.

## 5.     Resolution of Plaintiffs' Wage Payment Claim Requires a Trial

The evidence submitted is inconclusive to show that the Plaintiffs were not paid in a timely fashion as required by the Indiana Wage Payment Statute.  As noted by the court in its Findings of Fact ¶¶ 26-30, the information meant to be conveyed by the charts produced by the Defendants is subject to dispute.  Accordingly, there is a genuine issue of material fact on Plaintiffs' claim under the Indiana Wage Payment Statute.

### B.     Fair Labor Standards Act Claim

Plaintiffs allege that they were not paid for the overtime hours that they worked. The overtime compensation they seek arises from mandatory training (outside their

15

regular shifts) and sleep-time hours for which they were not compensated.  Because

Plaintiffs did not adequately respond to Defendants' argument with respect to mandatory

overtime, the court hereby **GRANTS** Defendants' motion with respect to that claim.

With respect to Plaintiffs' claim that they were not compensated for sleep-time hours,

Defendants argue that (1) Plaintiffs impliedly and/or expressly agreed to the deduction of

sleep time; and (2) Plaintiffs did not formally object to the Commissioners at an official

meeting as required by Indiana law.

### 1.     Whether Plaintiffs Impliedly Agreed to the Deduction of Sleep Time Is A Question of Fact

The sleep time regulation provides that in the absence of an express or implied

agreement by the employee that sleep time may be deducted, sleep time must be counted

as compensable time.  29 C.F.R. § 785.22.  In other words, the default position is that

employees have a right to be paid for sleep time where the employer requires them to be

on duty.  *Cunningham v. Gibson County, Tenn.*, 1997 WL 123750, at *1 (6th Cir. March

18, 1997).  The Defendant bears the burden of establishing that an exception exists to the

general provisions of the FLSA.  *Johnson v. City of Columbia*, 949 F.2d 127, 130 (4th

Cir. 1991).

Under Indiana law, both express and implied agreements require a meeting of the

minds. *Wagoner v. Joe Mater and Associates, Inc*., 461 N.E.2d 706 (Ind. App. 1984).

The difference is that in an express agreement, the intent of parties is evidenced by

spoken words or by a writing, while in an implied contract the intent of the parties is

16

evidenced by their conduct. *Id.* at 708; *see also Ahuja v. Lynco Ltd. Medical Research*, 675 N.E.2d 704 (Ind. App. 1996); *McQueeney v. Glenn*, 400 N.E.2d 806 (Ind. App. 1980). With respect to the sleep deduction provision, an implied agreement does not exist if the employee asserts reasonably contemporaneous verbal objections or protests to the employer's actions. *Braddock v. Madison County*, 34 F. Supp. 2d 1098 (S.D. Ind. 1998); *see Johnson*, 949 F.2d 127; *Burgess v. Catawba County*, 805 F.Supp. 341(W.D.N.C. 1992); *Jacksonville Professional Fire Fighters Ass'n Local 2961 v. City of Jacksonville*, 685 F.Supp. 513 (E.D.N.C. 1987); *Int'l Ass'n of Firefighters, Local 349 v. City of Rome*, 682 F.Supp. 522 (N.D.Ga. 1988). However, occasional complaints about payment do not constitute a contemporaneous protest. *Braddock*, 34 F. Supp. 2d at 1105 (holding that an implied agreement existed where plaintiffs continued to work for years without receiving any substantial assurance that the county intended to pay for additional hours and complained occasionally).

In the present case, there is no evidence of an express agreement regarding the sleep time deductions. Therefore, the critical question is whether there was an implied agreement. Defendants contend that there was such an agreement because Plaintiffs' behavior constituted merely "occasional complaints" rather than a contemporaneous protest. While there is sparse evidence of protest in the record – i.e., the Plaintiffs neither formally attended a Commissioners' meeting nor objected to the sleep time provisions in writing – the court concludes that there is a genuine issue of material fact regarding whether Plaintiffs' behavior rose to the level of protest, and hence, on the issue of

17

whether there was an implied agreement.  The record indicates that in a meeting of all Posey County EMS employees, Plaintiffs voiced objections about the deduction of sleep time to Russell, *id.* ¶ 12; that Russell informed President Elpers and Commissioner Martin of Plaintiffs' objections, *id.* ¶ 13; that Goff informed Commissioner Redman of his objections, *Id.* at ¶ 13; that some Plaintiffs occasionally complained to the Acting Director of the sleep time policy, *id.* ¶¶ 20-21. The fact that Russell wrote a letter in April 1995 informing Defendants' counsel, Mr. Hawley, that the "crews were content with the new schedule" does not change this finding, since the sleep-time policy was never raised in the letter. (Finding of Fact ¶ 18).  Accordingly, when considering the facts in a light most favorable to Plaintiffs, the court concludes that a reasonable trier-of-fact could find that there was a contemporaneous protest and consequently, that there was not an implied agreement.

### 2.    Plaintiffs Did Not Need to Formally Object At a Public Meeting of the Commissioners

Defendants cite I.C. § 36-2-2-11(b) for the proposition that the Plaintiffs' FSLA claim fails because they did not formally object to the Commissioners at an official meeting.  That section reads: "If a copy of the executive's proceedings has been signed and sealed by the auditor and introduced into evidence into court, that copy is presumed to be an accurate record of the executive's proceedings."  *Id.*  Defendants also cite *Jones v. State*, 163 N.E.2d 605 (Ind. 1960) for the proposition that commissions speak officially through the minutes and records made at duly organized meetings, and *Scott v. City of*

*Seymour*, 659 N.E.2d 585, 590 (Ind.Ct.App. 1995) for the proposition that commissions

can bind the county only when in session.

The law cited by Defendants does not directly address the central issue before the

court: whether Plaintiffs sufficiently objected to the sleep time policy to raise a viable

FSLA claim.  The court therefore cannot conclude, based upon the law cited by the

Defendants, whether Plaintiffs were in fact required to officially object at a

Commissioners' meeting, or whether objection to the Acting Director – Russell or Allison

– was sufficient.

### C.    Laches

The court now turns to Defendants' defense of laches to bar Plaintiffs' claims

under the Indiana Wage Payment Statute and the FLSA.  The equitable doctrine of laches

is derived from the maxim that those who sleep on their rights, lose them.  *Hot Wax, Inc.*

*v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999).  Laches protects Defendants from

prejudice caused by stale evidence, uncertainty regarding legal rights and statues, and

unlimited exposure to liability damages.  *See Smith v. Caterpiller, Inc.*, 338 F.3d 730, 733

(7th Cir. 2003); *Cook v. City of Chicago*, 192 F.3d 693, 696 (7th Cir. 1999).  Laches is

available where a plaintiff's delay in filing a claim (1) is unreasonable and inexcusable,

and (2) materially prejudices the defendant.  *Smith*, 338 F.3d at 733 (citing *Jeffries v.*

*Chicago Transit Authority*, 770 F.2d 676, 679 (7th Cir. 1985)).  The Seventh Circuit has

applied a "sliding scale" approach when considering the two elements: "the longer the

plaintiff delays in filing her claim, the less prejudice the defendant must show in order to

defend on laches." *Jeffries*, 770 F.2d at 680; *Hot Wax,* 191 F.3d at 819.  Specifically, the

*Smith* Court found that in light of Plaintiffs' eight and one-half year delay, the Defendant

did not need to "present a mountain of evidence establishing prejudice in order to succeed

on its laches defense." *Smith,* 338 F.3d at 734.

      Summary judgment based on the defense of laches is appropriate where the facts

necessary for determining whether the doctrine applies are not genuinely disputed.  *Id.* at

733 (citing *Jeffries*, 770 F.2d at 679).  For example, in *Smith*, the court granted summary

judgment based on laches, concluding that the following facts were sufficient to establish

material prejudice:

> (1) the testimony of several pertinent witnesses would be difficult, if not
> impossible, for Caterpillar to procure; (2) the witnesses' memories have faded
> over the several years and they would be unable to recollect specific details of
> Smith's employment with Caterpillar; (3) the inadvertent loss, or even
> intentional destruction in the course of business, of relevant personnel
> documents relating to Smith's employment would seriously impair
> Caterpillar's ability to present a defense to Smith's claims; and (4) the
> exposure of Caterpillar to liability for back pay has accrued steadily during
> Smith's delay in filing her lawsuit.

*Smith*, 338 F.3d at 733.  In cases in which there is no dispute as to the material facts

necessary to satisfy the laches elements, the standard for reviewing a district court's

application of laches is abuse of discretion.  *Hot Wax*, 191 F.3d at 819 (citing *Cannon v.*

*University of Health Sciences/The Chicago Med. Sch.*, 710 F.2d 351, 359 (7th Cir. 1983)).

      Evidence in the record establishes that Plaintiffs filed suit over seven and one-half

years after the time the sleep deduction policy was implemented.  Furthermore, they have

provided the court no justification for this delay besides their unsupported assertion that

"Plaintiffs did not know they were not being paid in accordance with the law until they

acquired the advice of counsel."  Plaintiffs' Memorandum of Law in Response to

Defendants' Motion for Summary Judgment at 59.  It is undisputed that Plaintiffs were

aware of the sleep deduction policy and discussed it regularly with each other.  The court

finds that a reasonably prudent employee would have inquired about his or her legal

rights in a more timely manner.  Accordingly, absent evidence to the contrary, the court

concludes that Plaintiffs delay was unreasonable and inexcusable.

In light of the Seventh Circuit's sliding scale approach, the Defendants need not

present a "mountain of evidence" to show material prejudice.  *Smith,* 338 F.3d at 734.

Here, the court finds that the following undisputed facts are sufficient to establish

material prejudice.  First, Plaintiffs are unable to recall when, where, and how often they

complained.  *See* Findings of Fact ¶ 12 n. 3, ¶¶ 20-21.  Second, Commissioner Martin,

whose affidavit is relied upon heavily by the Plaintiffs, admitted in a subsequent

deposition that he could not remember which employees, besides Brenda Thompson,

complained about the sleep time deduction.  Martin Dep. at 83.  Third, Commissioner

Martin could not recall the specifics of objections or the subject matter of those

objections.  Martin Dep. at 44.  Fourth, certain memos regarding various work-related

issues of Posey County EMS employees have been lost.  Allison Aff. ¶¶ 40, 57-58; Cox

Aff. ¶ 16; Daws Aff. ¶ 16.  Fifth, President Elpers, the Commissioner to whom Plaintiffs

claim to have made objections regarding the sleep deduction policy, is now deceased.

Russell Dep. at 247.  Lastly, Defendants exposure to damages arising from overtime wage claims has increased significantly in the past ten years.  Therefore, the court finds that Defendants have been materially prejudiced by the delay, and equity affords Defendants relief.  For these reasons, the court hereby **GRANTS** Defendants' Motion for Summary Judgment on the basis of the equitable defense of laches.

## IV.     Conclusion

For the reasons stated above, the court **GRANTS** in part, and **DENIES** in part,

Defendants' Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Partial

Summary Judgment.

**SO ORDERED** this___1st___ day of September 2005.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

R. Thomas Bodkin
BAMBERGER FOREMAN OSWALD & HAHN
tbodkin@bamberger.com

Michael J. Cork
BAMBERGER FOREMAN OSWALD AND HAHN, L.L.P.
mcork@bamberger.com

Jacob R. Fulcher
KAHN, DEES, DONOVAN & KAHN
jakef@k2d2.com

Jon D. Goldman
KAHN DEES DONOVAN & KAHN LLP
jongoldman@k2d2.com

Steven S. Hoar
KAHN DEES DONOVAN & KAHN

steveh@k2d2.com

Karen T. Poulton
BAMBERGER FOREMAN OSWALD & HAHN
kpoulton@bamberger.com